MILLS, Judge.
Volusia County (County) appeals from a final judgment entered in favor of Passan-tino, Schwartz and Maraville Estates, Inc. (Passantino) following a jury trial in an action brought by Passantino to set aside a tax deed given by the County to the Kents. The County also appeals from the final judgment entered in favor of the Kents on the crossclaim the Kents brought against the County seeking money damages for the value of the property conveyed to them by the tax deed in the event the tax deed was set aside. The appeals have been consolidated for our consideration.
Although the parties have raised a number of issues, the issue which is determinative of this appeal is whether the final judgment entered by the trial court on 11 December 1970 in an in rem quiet title action brought by the County against the property involved in this action, as provided by Section 197.650, Florida Statutes (1969), bars this action under the doctrine of res judicata. The County contends the judgment bars this action. Passantino contends the judgment is void because the court lacked jurisdiction to enter it.
The property involved in this litigation is Lots 1 through 16, Block 3, East Highlands, Daytona Beach. It was purchased in the names of Samuel H. Schwartz and Charles Passantino. Lots 5-16 were purchased in 1959. Lots 1-4 were purchased in 1964. In 1964, Passantino and wife conveyed a 25 percent interest in Lots 1-16 to Maraville Estates, Inc. in which they were the principal stockholders. Schwartz and Passantino also owned Lot 14, Block 56, which is adjacent to Lots 1-16. Although not involved in this litigation, Lot 14 is material to the discussion of this case.
Schwartz is a resident of Miami. Passan-tino, an active real estate broker in Florida for 25 years, is a resident of Palm Beach Towers, Palm Beach.
In 1960, Lots 5-16 were assessed on the tax rolls to Samuel A. Schwartz and Charles Passantino, 400 Broadway, Daytona Beach. In 1961, the address was changed to Box 1133, Daytona Beach. In 1962, the address was changed to c/o Anzac of Florida Realty, 205 Worth Avenue, Palm Beach. In 1963, the address was changed to Palm Beach Towers, Palm Beach. In 1965, the property description on the rolls was changed to Lots 1-16 and the name of the parties to whom assessed was changed to Samuel A. Schwartz, et al. From 1965 through 1970, Lots 1 — 16 were assessed to Samuel A. Schwartz, et al., Palm Beach Towers, Palm Beach, Florida. However, in 1966 the rolls reflect the property was subject to tax sale certificate No. 2,800 of 1967. Commencing in 1967 and continuing through 1970, the rolls reflect the property was under a county tax certificate. In 1971 and 1972, the property was assessed to Vol-usia County.
In 1959, Lot 14 was assessed to Samuel A. Schwartz, et al., 321 S. Shore Street, Miami Beach. In 1961, the address was changed to c/o Anzac of Florida Realty, Inc., 205 Worth Avenue, Palm Beach. In 1963, the address was changed to Palm Beach Towers, Palm Beach. In 1966, the name of the parties to whom assessed was changed to Charles Passantino and Samuel A. Schwartz. From 1966 through 1972, the tax rolls reflect Lot 14 was assessed to Charles Passantino and Samuel A. Schwartz, Palm Beach Towers, Palm Beach.
Passantino received and paid tax bills on Lots 5-16 for the years 1960,1961 and 1962. The 1960 tax bill was mailed to Samuel A. Schwartz and Charles Passantino, 400 Broadway, Daytona Beach. The 1961 tax bill was mailed to Samuel A. Schwartz & Charles Passantino, c/o Anzac of Florida Realty, Inc., 205 Worth Avenue, Palm Beach. The 1962 tax bill was mailed to Samuel A. Schwartz and Charles Passanti-no, c/o Anzac of Florida Realty, Inc., Palm Beach Towers, Palm Beach.
The 1963 and 1964 tax notices were mailed to Samuel A. Schwartz and Charles Passantino, Palm Beach Towers, Palm Beach. Passantino denied receiving these notices but contacted the tax collector’s office and timely paid the taxes due. At the time he paid the taxes, he requested the collector to send future tax notices to him at Palm Beach Towers, Palm Beach.
*732 Passantino denied receiving the 1965 tax bill on Lots 1-16 but again contacted the tax collector’s office and timely paid the taxes due. Upon payment of the taxes, Passantino penciled on the tax receipt a request that the records be changed to delete Schwartz, thus, leaving only his name on the rolls. There is no indication in the record that Passantino’s request was acted upon.
In 1964, Passantino received three separate tax notices: one for Lots 5-16, one for Lots 1-4 and one for Lot 14. In 1965, Passantino received two tax notices: one for Lots 1-16 and one for Lot 14.
In 1966, Passantino received only one tax notice and that was for Lot 14. The legal description in this tax notice was more lengthy than the legal description in the 1965 tax notice and Passantino was under the impression that the 1966 tax notice covered Lots 1-16 and Lot 14. He paid the taxes required by the 1966 tax notice. He did not pay the 1966 taxes due on Lots 1-16.
The description set forth in the 1965 tax notice for Lot 14 read:
“Lot 14 Blk 56 Daytona Exc Canal Rwy & Exc Lots 62 63 & 71 to 74 Inc in Blk 3 Resub Cypress Park MB 9 PG 191”
The description set forth in the 1966 tax notice for Lot 14 read:
“Lot 14 Blk 56 Daytona Exc Canal Rtwy & Exc Lots 32 to 35 Inc Blk 1 Resub Cypress Park MB 9 PG 191 & Inc vacated Lime St Exc S 20 Ft of E 180 Ft & Inc vacated Jones St. & Exc Lots 62 63 & 71 to 74 Inc in Blk 3 Resub Cypress Park Mb Pg 191”
In the tax sale of the county in 1967, the 1966 taxes on Lots 1 — 16 were delinquent and because there were no private bidders at the tax sale to bid on the property, it was stricken off to the County. The property became the subject of an in rem quiet title suit filed by the County on 10 November 1969. The Clerk forwarded a registered letter addressed to “Mr. Samuel A. Schwartz, et al., Palm Beach Towers, Palm Beach, Florida” which contained a newspaper copy of the notice of sale, and a slip warning “property in which you are interested is listed in copy of the enclosed notice”. The letter was returned unopened with the address stricken over and a printed stamp stating “not at Palm Beach Towers”. A default was entered against Lots 1 — 16 and subsequently on 11 December 1970 a final judgment quieting title in the County was entered by the court.
On 13 December 1971, Passantino sent a letter with his 1971 tax notice to the tax collector. He enclosed a map of the property which he believed he still owned and asked the collector’s office to outline the area included in his 1971 tax notice. The tax assessor’s office complied with Passanti-no’s request and outlined in red the property included in the legal description of the 1971 tax notice received by Passantino. It erroneously included Lots 1 — 16, the property which was vested in the County by the in rem quiet title judgment of December 1970.
On 21 July 1972, the Kents purchased Lots 1-16 from the County for the sum of $13,665. The money received from the sale was distributed by the Clerk pursuant to state statutes to the municipality and various taxing agencies.
Passantino argues that the errors by the tax collector and the tax assessor which caused the tax delinquency to take place also caused Passantino not to receive the notice of the in rem quiet title suit, thus, the trial court lacked jurisdiction to enter the judgment. He also argues that his belief that he paid the 1966 taxes amounted to payment of the taxes before the sale.
The County argues that this case is controlled by Sections 197.011, 197.650(2), 197.-675 and 197.680, Florida Statutes (1969), and Mullin v. County of Polk, 76 So.2d 282 (Fla.1954). We agree and reverse.
Owners of property are held to know that taxes are due and payable thereon annually and are charged with the duty of ascertaining the amount of such tax and paying the same before April 1 of the year following *733 the year in which such taxes are assessed. Section 197.011.
Section 197.650 provides that after the Board of County Commissioners receives a list of lands covered by certificates which have neither been redeemed nor purchased and have therefore been retained by the county, the Board shall file a complaint listing the lands described as parties defendant. It is not necessary to name as a defendant any person owning or having any interest in or liens upon the lands. Jurisdiction of the land in question and of all interested parties is obtained by means of publication of notice in accordance with Section 197.650(2). Under Section 197.675, the clerk is required to mail a copy of the portion of the newspaper containing the published notice to the owner of the property if the owner and his address appear on the tax roll. The failure of the owner to receive the notice does not affect the validity of this requirement.
Upon entry of the decree, all rights and interests in the property shall be cut off and title to such land when conveyed by the County shall be considered as new original title. Section 197.680.
The intent of Section 197.650 and the related statutes is to clear title to foreclosed lands to make it saleable. If the statutes are complied with, title is quieted in the County and in subsequent purchasers. In this case each and every statutory prerequisite was satisfied during the in rem foreclosure proceedings. Passantino admits this in his brief.
In Mullin v. County of Polk, Mullin filed suit to set aside the decree quieting title to his tax delinquent property and the subsequent deed from the county to purchasers from the county. Notice of the quiet title suit was sent by the clerk to the address of the person last paying taxes on the property as shown by the tax collector’s receipt book. The address shown in the receipt book was incorrect and the owner, Mullin, did not receive it. Not only was the address incorrect but Mullin’s name was misspelled. Mullin’s correct name and address was George E. Mullin, Brookville, Indiana, whereas the receipt incorrectly showed his name and address as Geo E. Mullins, c/o City Hall, Brooks ville, Florida.
Our Supreme Court held that the clerk did not have to determine the correctness of the name and address but merely had to comply with the statute and mail the notice to the name and address of the person last paying the taxes as shown on the tax collector’s receipt book where the owner’s name did not appear on the tax rolls. The court pointed out that every taxpayer knows that he must pay his real property taxes yearly. It concluded that the tax collector’s mistake did not deprive Mullin of due process in the in rem proceeding and the court had jurisdiction to enter the decree quieting title to the tax delinquent property.
Although the facts are not the same, the facts in the Mullin case and this case are sufficiently similar that we must conclude that the Mullin case controls the decision in this case. The court had jurisdiction of the in rem quiet title action and the judgment entered by it is res judicata in this case.
Passantino argues with persuasion and logic that errors by the tax collector and the tax assessor caused him not to receive the 1966 tax notice on Lots 1—16 and that these same errors caused him not to receive notice of the in rem quiet title action against the Lots. These errors were caused by the failure of the collector and assessor to delete Schwartz’ name from the tax roll and to substitute his, although he requested this change several times.
However appealing this argument may be, we are bound to follow the statutory and substantive law of our State. This we will do. We again point out that this case is governed by Sections 197.011, 197.650(2), 197.675 and 197.680, and Mullin v. County of Polk.
Passantino’s argument that he believed he was paying taxes on Lots 1-16 when paying taxes on Lot 14 is without *734 merit. The description in the 1966 tax notice was clearly that of Lot 14 and did not include Lots 1-16. This would readily appear to any layman, let alone a real estate broker of twenty-five years. When coupled with a tax that was lower than the 1965 tax on Lot 14, it is quite clear that the description did not include Lots 1-16. Whatever Passantino’s belief, he did not pay the 1966 taxes on Lots 1-16 and this is the only defense he raised from those permitted by Section 197.011.
The trial court erred in denying at the conclusion of all the evidence the County’s motion for a directed verdict made on the ground that the in rem quiet title action judgment was res judicata.
We reverse and remand with instructions to vacate the judgments appealed and to enter judgments in favor of Volusia County-
BOYER, Acting C. J., and JOPLING, WALLACE M., Associate Judge, specially concur.